NEW YORK SECURITY & TRUST CO. v. LINCOLN ST. RY. CO. et al.

(Circuit Court, D. Nebraska. November 24, 1896.)

No. 84.

1. STREET-RAILWAY MORTGAGE—FORECLOSURE—RIGHTS OF TRUSTEE AND BOND HOLDERS.

A provision in a street-railway mortgage, that no foreclosure proceedings shall be instituted, except by the trustee, unless he shall refuse to do so on the reasonable request of the bondholders, is not a limitation upon the trustee's right to foreclose, but upon the right of the individual bondholders to foreclose in their own names. 74 Fed. 67, affirmed.

2. MORTGAGE TO SECURE BONDS—POWERS OF TRUSTEES—FORECLOSURE.

By agreement between a street-railway company and a majority of its bondholders, interest coupons for 1894 and 1895 were exchanged for interest-bearing scrip. By the provisions of the mortgage the right of individual bondholders to institute proceedings for foreclosure was limited to cases wherein the trustee, after due demand by holders of $300,000 of the bonds, should fail to act. *Held,* that this agreement and provision did not deprive the trustee of the power to institute proceedings on behalf of the bondholders not parties to the agreement, although the bonds held by them amounted to only $100,000.

3. SAME—AUXILIARY PROCEEDINGS—RECEIVERS.

Upon the petition of a judgment creditor of a street-railway company, a receiver was appointed to take charge of its property. The trustee of the bondholder filed a bill for the protection of their rights, and prayed for a decree of foreclosure. *Held,* that the foreclosure suit was but an outgrowth of the pending proceedings, and auxiliary thereto, and if, at the time of its institution, there was no default to sustain the foreclosure bill, a supplemental bill could be filed when default should occur, and the court might treat the supplemental bill as the sole pleading.

This was a suit in equity by the New York Security & Trust Company against the Lincoln Street-Railway Company and others for the foreclosure of a mortgage. A supplemental bill was filed, and defendant's demurrer thereto was overruled. 74 Fed. 67. Subsequently a plea and answer were filed, and the complainant then obtained leave to file an amended supplemental bill, to which the defendant has also demurred.

Hornblower, Byrne, Taylor & Miller and Harwood, Ames & Pettis, for complainant.

Charles A. Clark, Sawyer, Snell & Frost, and Cobb & Harvey, for defendants.

SHIRAS, District Judge. This case has already been before the court upon demurrers to the bill, and it was then ruled that the original bill upon its face appeared to be well founded, in that it prayed for the foreclosure of the mortgage executed by the Lincoln Street-

Railway Company, upon the ground that certain portions of the interest coming due upon the mortgage bonds had come due, and had remained unpaid for over a period of six months, and therefore, under the terms of the mortgage deed, the right of foreclosure existed when the original bill was filed, and that it was proper to set forth, in a supplemental bill, facts showing that, since the original bill was filed, other portions of the mortgage debt had become due and remained unpaid. For a more full statement of the facts and of the ruling of the court upon the demurrer to the supplemental bill, see report of the case in 74 Fed. 67. Upon the overruling of the demurrer to the supplemental bill, a plea and answer were filed, which set forth the fact that an agreement in writing had been entered into between the trust company, complainant herein, and the street-railway company, providing for the funding of the interest coupons coming due in April and October, 1894, and in April and October, 1895, and the issuance of scrip therefor; it being claimed that thereby the rights of foreclosure of the mortgage based upon the nonpayment of the interest in the years 1894 and 1895 was defeated. Upon the filing of this answer, the complainant obtained leave to file an amended supplemental bill for the purpose of setting forth fully the facts connected with the agreement for funding the interest coupons maturing in 1894 and 1895, and the action had thereunder. From the allegations of the bill filed in pursuance of the leave granted, it appears that, under date of March 1, 1895, an agreement in writing was prepared, beginning as follows:

"Agreement, made this 1st day of March, A. D. 1894, between the undersigned, being holders of the first mortgage bonds of the Lincoln Street-Railway Company in the amounts set opposite our respective names, hereinafter called the parties of the first part, and the Lincoln Street-Railway Company, hereinafter called the party of the second part."

It was provided in said agreement that the interest coupons for the years 1894 and 1895 should be deposited with the New York Security & Trust Company, and scrip therefor should be issued bearing interest at 5 per cent. from and after April 1, 1894, and payable semiannually until said scrip should be redeemed or be otherwise disposed of; it being further expressly provided that:

"Default, continuing for a period of ninety days, in the payment of interest on said scrip, shall entitle the holder or holders of said scrip to surrender the same to the New York Security & Trust Company, and to demand and receive from said trust company the said coupons deposited as is herein provided; and thereupon the holders of said coupons shall be restored to all the rights conferred upon them by the provisions of the mortgage and deed of trust under which the said first mortgage bonds were issued."

From the allegations of the bill it further appears that the total amount of bonds issued under the terms of the mortgage deed by the street-railway company was $600,000, and that the holders of $497,000 of this amount signed the agreement for funding the interest coupons, and deposited their coupons with the trust company, receiving scrip therefor. It is further alleged that the interest coming due, on the scrip thus issued, on the 1st day of April, 1895, was not paid, and, after the same had remained unpaid for a period of 90 days, the holders of $481,000 of the scrip issued as above stated re-

turned the same to the trust company, and received back the coupons representing the unpaid interest coming due in the years 1894 and 1895, and thereupon a majority of the holders of the mortgage bonds issued by the street-railway company in writing directed the trustee to declare the principal of said bonds to be fully due, which declaration was duly made.    To this amended supplemental bill a demurrer is interposed, in support of which it is claimed that the foreclosure proceedings were not instituted at the request of the holders of not less than $300,000 of the mortgage bonds, and the same were therefore improvidently brought, and that the act of declaring the principal of the bonds to be due took place after the beginning of this suit, and cannot be relied upon as a foundation for sustaining the action.

In ruling upon the demurrer previously submitted in this case, I had occasion to construe the meaning of article 10 of the mortgage deed, and reached the conclusion that its provisions were not a restriction upon the right and power of the trustee to initiate foreclosure proceedings, but only upon the right of individual bondholders to proceed in their own names; and, seeing no sufficient reason to change the ruling then made, I again hold that the fact that a majority of the bondholders did not request or direct the trustee to institute proceedings looking to the foreclosure of the mortgage is not a bar to the proceeding.    Upon the face of the bill demurred to, it was averred that the mortgagor company had defaulted in the payment of interest upon certain of the mortgage bonds, and this default had existed for more than six months before the original bill was filed.    If it appeared that all the holders of the mortgage bonds had signed and surrendered their interest coupons under the provisions of the agreement dated March 1, 1894, it might be that such action on their part would have defeated the right of the trustee to institute proceedings looking to foreclosure of the mortgage upon the 25th day of March, 1895, the day when the original bill was filed; but the fact is that the holders of fully $100,000 of the mortgage bonds did not sign this agreement, and were not bound by its terms. The interest due the holders of these bonds on the 1st day of April, 1894, remained unpaid, and was not exchanged for scrip, and they had the right to insist upon the due enforcement of the mortgage security for their protection.    Thus, in Railroad Co. v. Fosdick, 106 U. S. 47, 68, 1 Sup. Ct. 10, it is said by the supreme court:

"But, inasmuch as by the terms of the first article the conveyance is declared to be for the purpose of securing the payment of the interest as well as the principal of the bonds, and as by the fourth article the mortgagor's rights of possession terminate upon a default in the payment of interest as well as principal on any of the bonds, we are of opinion that, independently of the provisions of the other articles, the trustees (or, on their failure to do so, any bondholder), on nonpayment of any installment of interest on any bond, might file a bill for the enforcement of the security by the foreclosure of the mortgage and sale of the mortgaged property. This right belongs to each bondholder separately, and its exercise is not dependent upon the co-operation or consent of any others, or of the trustees. It is properly and strictly enforceable by and in the name of the latter, but, if necessary, may be prosecuted without, and even against, them. It follows from the nature of the security, and arises upon its face, unless restrained by its terms."

By the provisions of article 10 of the mortgage executed by the street-railway company, the right of the individual bondholders to

institute proceedings for the foreclosure of the mortgage is limited to cases wherein the trustee, after due demand, made in writing, by the holders of at least $300,000 of the mortgage bonds, fails to act; but no such limitation is placed upon the right of the trustee, and it is therefore clear that the trustee may institute foreclosure proceedings for a default in payment of interest on a part of the bonds, as well as though such default existed as to the entire issue. It thus appears that, on the 25th day of March, 1895, when the original bill was filed by the trustee, there was then due, on at least $100,000 of the mortgage bonds, the interest accruing on the 1st day of April, 1894. This interest was overdue nearly one year, and the same had not been refunded or exchanged for scrip, nor had the default been in any manner waived; and hence it is clear that the trustee might, as it did, file a bill for the foreclosure of the mortgage, and when, by the lapse of time and the failure of the company to pay the interest on the scrip issued under the agreement of March 1, 1895, that agreement ceased to be operative, and the coupons for the interest coming due in April and October, 1894, were returned to the owners thereof, it was entirely proper for the trustee to file a supplemental bill, averring the facts in that regard as well as the action taken for declaring the principal of the debt to be due and collectible.

So far the case has been considered as though its origin was in the so-called original bill, filed by the trustee on the 25th day of March, 1895. In fact, as the record shows, this proceeding originated in a bill filed in this court by Joseph Sampson, on the 4th day of January, 1895, wherein it is averred that said Sampson is a judgment creditor, for a large amount, of the Lincoln Street-Railway Company, and, being unable to secure payment of his judgment by the ordinary legal process, he invoked the aid of the court of chancery to reach the surplus earnings of the railway, and to that end he prayed the appointment of a receiver. Upon this bill the receiver now in charge of the property was appointed, and he immediately took possession of the property of the railway company, and has since been operating the same. Subsequently the trustee in the mortgage executed by the street-railway company obtained leave to file a bill for the protection of the rights of the bondholders represented by it, and on March 25, 1895, what is called the "original bill" in this case was duly filed, wherein the trust company set forth the execution of the mortgage deed by the street-railway company, the failure to pay the interest coming due April 1, 1894, and further recited and set forth the fact that the mortgaged property was in possession of the receiver already appointed by the court, and therefore the trust company, as trustee for the bondholders, was disabled from taking possession or control of the mortgaged property. Upon the filing of this bill, the court made an order directing the receiver to hold the property for the benefit of all parties concerned.

It will thus be seen that the proceedings instituted for the foreclosure of the mortgage are not, in fact, the foundation of this suit. If the court or the trust company should now dismiss all bills filed

by the New York Security & Trust Company looking to a foreclosure of the mortgage, the case would not go out of court, nor would the street-railway company be reinstated in the possession and control of the railway line and its appurtenances; but the court would remain in control thereof under the bill originally filed by Joseph Sampson, and, under the allegations of that bill, it would be the duty of the court to protect the interest of the mortgage bondholders. For the purpose of getting upon the record a proper proceeding for the protection of the rights of the bondholders, the court granted leave to the trust company to file a bill in the premises, which has been done; but, when filed, it was but an outgrowth of the proceedings already pending, and is auxiliary thereto. Under these circumstances, if it were true that, when the bill of March 25, 1895, was filed, there was then no default in the payment of the interest by the railway company, but such default has since happened, it would be competent for the trust company to file a supplemental bill, setting forth the facts, and praying proper relief thereon, whenever such default occurred. For illustration, if the bill filed March 25, 1894, had set forth the execution of the mortgage and the sale of the bonds, and had then averred that no interest was then due, the bill would have been a proper one, in view of the fact that the court had taken possession of the property by its receiver, and was proceeding to deal therewith in the interest of creditors. If, subsequently, interest came due and remained unpaid, it would be open to the trustee to file a supplemental bill, setting forth the facts, and praying a foreclosure in accordance with the terms of the mortgage. As the case now stands, the court can wholly ignore the bill filed March 25, 1895, and can treat the so-called amended supplemental bill as the sole pleading relied on by the trustee. The jurisdiction of the court over the property and over the street-railway company dates from the appointment of the receiver and the service of process based upon the bill filed by Joseph Sampson; and the rights of the trustee, as the representative of the bondholders, to the property in the hands of the court, are presented by the bill last filed; and, if the facts in that bill show that the trustee is entitled to a foreclosure of the mortgage, it is immaterial what the facts were in March, 1895. The demurrer is, therefore, overruled.